FÉLIX LAUREANO MALDONADO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, AUGUSTO PALMER, JUDGE, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. C-65-7. Decided May 18, 1965.

*William Fred Santiago, William Morales Torres,* and *Edwin R. Bonilla Vélez* for petitioner. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

An information was filed in the Superior Court, Bayamón Part, against Félix Laureano Maldonado for a violation

of the *Bolita* Act—§ 4 of Act No. 220 of May 15, 1948 (33 L.P.R.A. § 1250).[1] The information is dated January 7, 1964.

He was charged that ". . . On or about December 22, 1963 . . . unlawfully, wilfully, and criminally he had in his business and at his disposal paper lists containing three-digit numbers followed by a hyphen and figures to the right, one envelope containing three-digit numbers followed by a hyphen and figures to the right, among them 110-100, 500-50. . . ."

The affidavit of December 21, 1963, supporting the warrant for the search of petitioner's business— which warrant was executed on December 22, 1963, and there were seized "seven pieces of paper containing three-digit numbers followed by a hyphen and a unit to the right, a white envelope on which the numbers 110-100 and 500-50 were written, a piece of paper on which was written a note addressed to Félix, a small wooden box containing $7.50, and a list of *bolita* numbers—reads in its pertinent part as follows:

". . . That I am a member of the Puerto Rico Police and render services as an undercover agent in the Vice Squad of the Northern Area.

"That I know for a fact, because I have seen and investigated him, that the individual Félix Laureano Maldonado, a resident of Vega Alta, P.R., who operates a *cafetín* business

---

[1] Section 4 of Act No. 220 provides in its pertinent part as follows:

"Any person caught carrying or transporting or who has in his possession for any reason any *papeleta, billete,* ticket, notebook, list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita, bolipool,* combinations connected with the pools or *bancas* of the race tracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or any other similar ones which may be utilized or used in said unlawful games *or* connected with the practice thereof, shall be guilty of a public offense . . ."

(We have italicized the word *or* to invite attention to the fact that by construction of this Court in *People v. Mantilla,* 71 P.R.R. 35, 40 (1950), the conjunction *or* may be substituted by the conjunction "and.")

on Laureano Vega Street of Vega Alta, P.R., is engaged in collecting and handling in said *cafetín* material of the illegal game known as *bolita* and/or *bolipool*. . . . That on or about December 20, 1963, in the afternoon hours while I was in the *cafetín* of the said Félix Laureano Maldonado, there arrived an individual, whom I do not know by name, and handed to Félix Laureano Maldonado a piece of white paper saying at the same time to him, 'Those are the numbers which I have sold, I'll bring you the money tomorrow.' That then Félix Laureano opened the piece of paper and started checking the numbers written thereon. That I was able to see on that paper several three-digit numbers followed by a hyphen and a unit to the right written in pencil, which are typical numbers of the illegal *bolita* or *bolipool* game. That Félix Laureano then said to that individual to tell Eusebio and Rafael to bring him the lists early Sunday morning. That since at that moment I was performing some confidential work and I have orders not to identify myself as a policeman, I decided to make a note of the matter and report to my superiors and act in accordance with their instructions."

Petitioner filed a motion for suppression of evidence alleging, among other grounds, that the material obtained on the authority of the search warrant was not seized in pursuance of law.

The corresponding hearing having been held on December 21, 1964, the trial court entered an order on December 28, 1964 denying the motion, disqualified itself, and instructed the clerk to refer the record to the administrative judge to be set for hearing. At appellant's request, we issued a writ of certiorari on January 27, 1964, to review the said order.

Petitioner alleges that the trial court committed the three errors which we discuss below.

1. "Respondent court erred in denying the Motion for Suppression of Evidence on the ground that it was bound to presume the correctness of the procedures, notwithstanding that the undercover agent who made the affidavit supporting the search

testified that he had not been examined by the judge who issued the warrant, in violation of Rule 231 of the Rules of Criminal Procedure of Puerto Rico, of the Constitution of the Commonwealth, and the Federal Constitution."

In support of this assignment, petitioner alleges that the phrase "examination of the affiant" (employed in Rule 231 of the Rules of Criminal Procedure) entails something more than a mere reading of what the affiant has written, and that a magistrate may not perform the "weighted judicial function" at the discretion of an undercover agent, no matter how honest he may be. Furthermore, says petitioner, this task of examining the affiant is not "a clerical function nor of routine, nor pro forma, but an examination and conviction, and in this case the judge who issued the warrant never examined the affiant, according to the agent's own testimony at the witness stand." Petitioner contends "that an examination presupposes inquiry and investigation in order that the magistrate may convince himself and then authorize the search warrant; it is not a mere authentication of an affidavit, which may well be done by a clerk of the court or by a notary public; it is, in our opinion, strictly and exclusively a judicial function."

Since it is closely related to this procedural question—of affiant's examination—petitioner discusses the respondent judge's statement that "he presumed the correctness of the procedures." Petitioner contends that "A norm of presuming the correctness of the procedures places the petitioner or any citizen in a state of indefense, and would render academic any motion for suppression of evidence, since, regardless of the evidence which petitioner may present, it could not controvert the alleged presumption."

The Solicitor General maintains that it appears from the original record of the case and from the transcript of evidence that compliance was had with Rule 231 of the Rules of Criminal Procedure, and that in the "search warrant

issued by the Justice of the Peace, Jorge Rosario Torres, the latter asserts that he examined affiant Ángel M. Rodríguez." The Solicitor explains that "it clearly appears that the agent made his affidavit before the Hon. Judge, who was present at all times. *It must be necessarily concluded that while all of this was taking place, the judge and the agent talked about the details of the case.* The judge had an opportunity to hear the agent dictating his affidavit, which he swore before him, and then checked it." Given those circumstances, the Solicitor General further says, "we maintain that *substantial compliance* was had with Rule 231, and that petitioner suffered no substantial prejudice, since the judge had before him *sufficient basis* to satisfy himself that there existed probable cause for the search." (Italics ours.)

The Solicitor General adds: "Our position is even clearer if we take into account that under Rule 231, contrary to the former state of law, the judge need not make said examination under oath, nor take depositions in writing, as provided by § 504 of the Code of Criminal Procedure, 34 L.P.R.A. § 1814."

Rule 231 of the Rules of Criminal Procedure provides, insofar as pertinent herein, that:

"A search warrant shall not be issued except upon a written statement, made before a magistrate[2] under oath or affirmation, which shall set forth the facts tending to establish the grounds for the issuance. *If from the affidavit and the examination of the affiant,* the magistrate is satisfied that there is probable cause for the search, he shall issue the warrant. . . ." (Italics ours.)

Rule 231 comprises an aspect which was covered by § 504 of the Code of Criminal Procedure which reads as follows:

---

[2] According to Rule 3 of the Rules of Criminal Procedure:

"A magistrate is an officer having power to issue a warrant of arrest against a person charged with an offense. Magistrates are: the justices of the Supreme Court, the judges of the Superior Court, the judges of the District Court and the *justices of the peace.*" (Italics ours.)

"The justice of the peace must, before issuing the warrant, examine on oath the complainant, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them."

Section 504 is derived from § 1526 of the Code of Criminal Procedure of California.

In addition to § 504, §§ 505 and 506 of the Code of Criminal Procedure provided that the deposition must set forth "the facts tending to establish the grounds of the application, or probable cause for believing that they exist," and that the judge must issue a warrant if he "is satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence."

Although Rule 231 *supra* is based on Rule 41 (c) of the Federal Rules of Criminal Procedure and §§ 1525–28 of the Penal Code of California, affiant's examination as a requisite for determining probable cause for the search is not a requisite under the Federal Rule and is discretionary at present in California, according to § 1526 of its Penal Code.

■ A reading of the affidavit in this case shows without doubt that it sets forth facts and circumstances which fully warrant by themselves the existence of probable cause. *United States* v. *Ventresca*, 33 U.S. L. Week 4193 (1965) ; *People* v. *Cintrón*, 80 P.R.R. 348 (1958) ; *People* v. *Rivera*, 79 P.R.R. 697 (1956) ; *People* v. *Mantilla*, 71 P.R.R. 35, 49 (1950) ; *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949). It is argued, however, that this is not sufficient; furthermore, that the magistrate was duty bound "to examine the affiant."

Petitioner's contention is based on the following incident in the course of the examination of the undercover agent who swore the affidavit on which the search warrant in this case was issued:

"Q. You dictated to your secretary, your private secretary; you signed the affidavit, the judge checked it and signed the warrant?

A. Yes, sir.

Q. Was that all that happened there?

A. Yes, sir.

Q. What do you mean, so that there be no confusion, when you say that the judge checked the affidavit? What do you mean to say by that?

A. As I was about to swear the affidavit, the judge checked the affidavit and on the basis of that affidavit he issued the search warrant.

Q. Then you say that the judge checked it, do you mean he read it?

A. Yes, sir.

Q. Was that all the judge did?

A. Yes, sir.

Q. After he did that, he issued the warrant?

A. Yes, sir.

Q. That was in which station?

A. Police Station of Arecibo where the offices are located."

 It appears clearly from the record of this case that while the policeman was dictating his affidavit to the secretary in the police station, the justice of the peace was present listening, and that when the secretary finished he checked the affidavit. If the judge did not question him, as testified by the policeman, it was because he did not consider it pertinent, since he did not need further information to reach the judicial conclusion that the affidavit showed probable cause for ordering the search. We conclude that under these circumstances compliance was had with the requisite of examining the affiant, since the term "examination" does not mean to question affiant exclusively. The examination was actually made when the affidavit was dictated before the magistrate, who heard it and afterwards checked it and determined that it set forth sufficient facts to fully warrant the determination of probable cause. Under those circumstances, it was unnecessary and useless to make any other

questions to the affiant on such particulars. It is advisable to point out, however, that under circumstances which are not similar to those concurring in this case, judges should "examine" the affiant more specifically, in addition to his affidavit. As stated by Mr. Justice Holmes, the rights against arbitrary and unreasonable searches "are to be protected even if the same result might have been achieved in a lawful way." *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 (1920).

In law we cannot impress upon the phrase "examination of the affiant," employed in the text of Rule 231, the literal approach pointed out by petitioner, for though we are conscious and must be zealous guardians of the principle that the procedural requisites which safeguard the right against arbitrary and unreasonable searches must be strictly observed, we also believe that a practical approach should prevail on this matter, as indicated in *Brinegar, supra*. We must make clear that this practical approach is not at variance with the principle stated respecting procedural requisites, but, on the contrary, that it contributes to make them feasible.

In *Ventresca, supra*, Mr. Justice Goldberg, after citing several cases to illustrate the principles which govern the criterion of probable cause, said:

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . Technical requirements of elaborate specificity once exacted under *common law* pleadings have no proper place in this area."

And further on in this case the said Magistrate warns that:

". . . A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

In view of the foregoing, we conclude that the error assigned by petitioner was not committed.

2–3. As second and third errors committed by the trial court, it is alleged that:

2. "The respondent court erred in denying the Motion for Suppression of Evidence based on the falsity of the affidavit, since petitioner's evidence was never controverted."

3. "The respondent court erred in concluding that the affidavit was sufficient, without the undercover agent who gave it sustaining in court the facts supporting said affidavit."

Petitioner contends that he presented evidence to show the falsity of the affidavit, to the effect that on the day and hour stated therein he was in another place than that mentioned by the undercover agent in his affidavit, and that the district attorney did not present any evidence to controvert that fact. Further, that the agent "merely stated that he had seen petitioner in his business, without saying anything about illegal *bolita* game transactions, according to the statements made in his affidavit," and that "it was the duty of the district attorney to prove the facts appearing in the affidavit which supported the search warrant, which was not done." The Solicitor General alleges, on the contrary, that petitioner's argument is rather aimed at challenging the weighing of the evidence made by the trial judge; that the latter "did not give credit to the evidence in that sense (of the alibi) and for the purpose of the record he gave the reasons therefor; and that, contrary to petitioner's assertion, the physician's testimony was controverted by agent Rodríguez who insisted that defendant was in his business that afternoon."

It is a well-settled rule that the sufficiency of an affidavit supporting the issuance of a search warrant may

be impeached by means of proof that the statements made in the affidavit are false. *People* v. *Torres,* 80 P.R.R. 238 (1958).

In this case the evidence presented turned exclusively on the defense of alibi, so that there was no opportunity to question and, therefore, to introduce evidence on the illegal *bolita* game transactions recited in the affidavit.

■ It appears from an examination of the record that the judge did not give credit to petitioner's evidence and that he believed the undercover agent. This being a question of credibility and the entire record having been examined, we hold that there is no reason for disturbing the weighing of the oral evidence made by the trial judge.

The writ will be quashed and the case remanded for further proceedings.